IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **MOHAMED KAIR G.,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 19-1730** |
| v. | * | |
| | * | |
| | * | |
| **ANDREW M. SAUL,** | * | |
| **Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.**[1] | * | |

\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OPINION GRANTING DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff Mohamed G. seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 13), Defendant's Motion for Summary Judgment (ECF No. 14), and Plaintiff's Response to Defendant's Motion for Summary Judgment (ECF No. 15).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion for Summary Judgment

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security. He is, therefore, substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

(ECF No. 14) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 13) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

# I

## Background

Following remand by the Court and the Appeals Council (R. at 632-50), Administrative Law Judge ("ALJ") Andrew M. Emerson held a supplemental hearing on March 18, 2019, in Washington, D.C., where Plaintiff and a vocational expert ("VE") testified (R. at 564, 589-622). On April 2, 2019, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of May 13, 2010, through the date late insured ("DLI") of December 31, 2013. R. at 561-79. In so finding, the ALJ found that Plaintiff had not engaged in substantial, gainful activity from May 13, 2010, through December 31, 2013, and that he had severe impairments through the DLI. R. at 566-67. He did not, however, have through the DLI an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. R. at 567.

The ALJ then found that, through the DLI, Plaintiff had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) except he could occasionally climb ramps and stairs, balance, kneel, stoop, crouch, and crawl. [Plaintiff] could never climb ladders, ropes, and scaffolds. He would have needed to avoid concentrated exposure to extreme cold, extreme heat, excessive vibration, and hazardous moving machinery and unprotected heights.

R. at 568.[3] In light of this RFC and the VE's testimony, the ALJ found that, through the DLI, Plaintiff could have performed his past relevant work as a liquor store manager, retail store

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or

salesman, and unarmed security guard. R. at 572-73. The ALJ thus found that Plaintiff was not disabled from May 13, 2010, through December 31, 2013. R. at 573.

On June 13, 2019, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case then was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

## II

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made, the

---

when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

3

[Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1522(a), 416.920(c), 416.922(a).[4]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.922(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1522(b)(1)-(6), 416.922(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).  RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id.*  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.  *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience.  *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012).  The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.  *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled.  If the claimant cannot

make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III

### Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

**IV**

**Discussion**

Plaintiff argues that the ALJ failed to follow the procedure in 20 C.F.R. § 404.1520a for analyzing mental impairments. Pl.'s Mem. Supp. Mot. Summ. J. 9-14, ECF No. 13-2. He then contends that the ALJ failed to consider his obesity as a medically determinable, severe impairment under Social Security Ruling[5] ("SSR") 02-1p, 2002 WL 34686281 (Sept. 12, 2002). *Id.* at 14-19. Plaintiff finally argues that substantial evidence does not support the ALJ's RFC assessment. *Id.* at 19-28. For the following reasons, Plaintiff's contentions are unavailing.

**A.   ALJ's Step-Two Determination of Mental Impairments and Obesity**

Plaintiff contends that the ALJ failed to follow the special technique under 20 C.F.R. § 404.1520a when he evaluated his mental impairment. *Id.* at 9-14. "The Social Security Administration has promulgated regulations containing 'listings of physical and mental impairments which, if met, are conclusive on the issue of disability.' A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford*, 734 F.3d at 291 (citation omitted); *see* 20 C.F.R. pt. 404, subpt. P, app. 1. In addition to the five-step analysis discussed above in Part II and outlined in 20 C.F.R. §§ 404.1520 and 416.920, the Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments. 20 C.F.R. §§ 404.1520a, 416.920a. These regulations require application of a psychiatric review technique at the second and third steps of

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

7

the five-step framework, *Schmidt v. Astrue*, 496 F.3d 833, 844 n.4 (7th Cir. 2007), and at each level of administrative review. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). This technique requires the reviewing authority to determine first whether the claimant has a "medically determinable mental impairment." *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1). If the claimant is found to have such an impairment, then the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *id.* §§ 404.1520a(b)(2), 416.920a(b)(2), which specifies four broad functional areas: (1) "understand, remember, or apply information"; (2) "interact with others"; (3) "concentrate, persist, or maintain pace"; and (4) "adapt or manage oneself." *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). According to the regulations, if the degree of limitation in each of the four areas is rated "none" or "mild," then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe," "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). If the claimant's mental impairment is severe, then the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). If so, then the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's RFC. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3). "The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas." *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (per curiam) (citing 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4)); *see Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 662, 659 (4th Cir. 2017). The "failure to properly document

application of the special technique will rarely, if ever, be harmless because such a failure prevents, or at least substantially hinders, judicial review." *Patterson*, 846 F.3d at 662.

Here, the ALJ found that Plaintiff's "hypertension, hyperlipidemia, coronary heart disease, and status-post three vessel coronary bypass on May 17, 2010," were severe impairments because they caused more than a minimal limitation in his ability to engage in basic work activities. R. at 566. The ALJ found, however, that Plaintiff's gallbladder dysfunction, bilateral plantar fasciitis, onychomycosis, right third toe neuroma, prostatitis, gastroesophageal reflux disease, osteoporosis, allergic rhinitis, and seborrhea/dermatitis were not severe impairments. R. at 567. Plaintiff argues that remand is warranted because he suffers from a medically determinable mental impairment and because the ALJ failed to apply the special technique in 20 C.F.R. § 404.1520a. Pl.'s Mem. Supp. Mot. Summ. J. 10-11, ECF No. 13-2 (citing R. at 44-45, 183, 185-87, 363).

As Defendant points out, however, the ALJ must first evaluate the claimant's pertinent symptoms, signs, and laboratory findings to determine whether he or she has a medically determinable impairment. 20 C.F.R. § 404.1520a(b)(1). "[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source. [The ALJ] will not use [the claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s). After [the ALJ establishes] that [the claimant has] a medically determinable impairment(s), then [the ALJ determines] whether [his or her] impairment(s) is severe." *Id.* § 404.1521. Once the ALJ determines that the claimant has a medically determinable mental impairment, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment and document the ALJ's findings in accordance with 20 C.F.R. § 404.1520a(e). *Id.* § 404.1520a(b)(1).

Here, Plaintiff did not allege any mental impairment in his disability reports. R. at 69, 78, 164. He did allege on a function report in October 2013 and at his first hearing in January 2016 that side effects from his medications caused, among other things, drowsiness, dizziness, and a lack of concentration. R. at 200, 207, 568, 571-72. Plaintiff also alleged in July 2013 having problems with memory, concentration, and handling stress and changes in routine. Pl.'s Mem. Supp. Mot. Summ. J. 10, ECF No. 13-2 (citing R. at 185-87). He also testified at the first hearing that he "couldn't concentrate anymore." *Id.* (citing R. at 45). Plaintiff's statements of symptoms are not enough to establish a medically determinable mental impairment, and so the ALJ was not required to use the special technique in the absence of objective medical evidence from an acceptable medical source. *See* 20 C.F.R. § 404.1521.

Plaintiff argues, however, that his "treating physicians have also recognized, diagnosed, and prescribed [him] with medications to address mental impairments, such as when [he] was diagnosed with anxiety and was prescribed Clonazepam and Xanax." Pl.'s Mem. Supp. Mot. Summ. J. 10-11, ECF No. 13-2 (footnotes omitted) (citing R. at 363). Plaintiff sought a "short-acting anxiolytic" in April 2012 because he "will be flying soon, but [he] has a fear of flying." R. at 362. His physician, therefore, prescribed Xanax for his flight. R. at 363. In any event, Plaintiff reportedly had been taking Clonazepam in November 2011 for insomnia. R. at 366. Absent the establishment by objective medical evidence from an acceptable medical source of a mental impairment that had lasted or was expected to last for twelve continuous months, Plaintiff's argument regarding the ALJ's failure to use the special technique in 20 C.F.R. § 404.1520a is without merit. *See Patterson*, 846 F.3d at 659 (ALJ applies special technique "[i]f the ALJ determines that a mental impairment exists"); 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).

Plaintiff next asserts that remand is warranted because the ALJ did not consider his obesity as a medically determinable, severe impairment under SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002) (Pl.'s Mem. Supp. Mot. Summ. J. 14-19, ECF No. 13-2). Defendant maintains that, among other things, any error in the ALJ's lack of discussion of his obesity is harmless because the record does not indicate any functional limitations from obesity and because Plaintiff failed to point to any additional limitations supported by the evidence (Def.'s Mem. Supp. Mot. Summ. J. 12, ECF No. 14-1). According to Plaintiff, however, Defendant's harmless-error argument is an impermissible *post hoc* rationalization. (Pl.'s Resp. to Def.'s Mot. Summ. J. 3-4, ECF No. 15). *See, e.g.*, *Dep't of Homeland Sec. v. Regents of Univ. of Calif.*, 591 U.S. ___, No. 18-587, slip op. at 16-17, 2020 WL 3271746, at *10 (U.S. June 18, 2020). "[T]he failure to discuss a claimant's obesity under SSR 02-1p may be harmless error if corresponding functional limitations are not established." *Harrison v. Berryhill*, No. 5:17-CV-00255-FL, 2018 WL 4576782, at *13 (E.D.N.C. May 24, 2018), *report and recommendation adopted*, No. 5:17-CV-255-FL, 2018 WL 3993393 (E.D.N.C. Aug. 21, 2018). Here, "the state agency physicians reviewed the medical records, which included notations of his height and weight, and opined that [Plaintiff] could perform [light] work, with additional limitations." *Id.* at *14. "This constitutes substantial evidence supporting [the ALJ's] determination. Thus, any error in failing to discuss [Plaintiff's] obesity under SSR 02-1p is harmless because it would not affect the outcome of the case." *Id.* Even if the ALJ had erred in not discussing Plaintiff's obesity in the RFC assessment, "such an error would be harmless, because the Plaintiff has not suggested his obesity would limit his standing or walking [or other functions] to a degree greater than the ALJ already limited Plaintiff in the RFC." *Mark N. v. Comm'r, Soc. Sec.*, Civil Case No. CCB-18-936, 2019 WL 1226437, at *2 (D. Md. Mar. 15, 2019).

Plaintiff's argument regarding the ALJ's failure to evaluate his obesity under SSR 02-1p thus also fails.

**B.     ALJ's RFC Assessment**

The Court finally addresses Plaintiff's contention that "[t]he ALJ's RFC determination is not supported by substantial evidence, as the ALJ omitted relevant limitations from the RFC on the basis of medical improvement without ever evaluating [his] RFC for the period prior to his medical improvement."  Pl.'s Mem. Supp. Mot. Summ. J. 19, ECF No. 13-2.  According to Plaintiff, the ALJ did not account for his need for additional work breaks due to urinary frequency for the period before his laser vaporization procedure.  *Id.* at 21-28.  "[T]he ALJ failed to evaluate [his] RFC for the three-year period prior to his medical improvement.  For this reason, remand is warranted for the ALJ to consider a closed period of disability between his alleged onset date of May 13, 2010, through the date of medical improvement."  *Id.* at 28.  Defendant maintains, on the other hand, that "[t]his Court previously held that the rationale in the ALJ's first decision was sufficient to explain his finding that Plaintiff did not need additional work breaks to accommodate his alleged urinary frequency, and the current ALJ's decision provides a nearly identical rationale."  Def.'s Mem. Supp. Mot. Summ. J. 14, ECF No. 14-1.  "Accordingly, this Court should once again affirm the ALJ's rationale and decline Plaintiff's implicit invitation to re-weigh the evidence."  *Id.* at 15.

In his January 2016 decision, the ALJ recounted Plaintiff's testimony from the first hearing "that he needed to use the bathroom every 15 minutes."  R. at 22.  The ALJ found, however, that, "prior to the expiration of his date last insured and just over five months after undergoing laser vaporization of his prostate, he reported to his urologist that he only occasionally had urinary urgency/frequency."  R. at 22.  "He was continued on Avodart and was started on Toviaz, which

12

apparently successfully addressed his urgency/frequency." R. at 22. "He was able to take a long plane ride to Lebanon in 2014 and later indicated that his symptoms were under control." R. at 22 (citations omitted). Thus, the ALJ found that, "prior to the expiration of his DLI, [Plaintiff] did not need more than the usual work breaks." R. at 22.

On appeal, Plaintiff argued, among other things, that the ALJ failed to evaluate properly his urinary frequency. R. at 639. The Court found, however, that substantial evidence supported the ALJ's finding that Plaintiff's urinary frequency could be addressed with regular breaks. R. at 639. Specifically, the evidence that the Court found to be substantial included evidence of Plaintiff's medical improvement following his vaporization procedure. R. at 639-40. "Thus, the ALJ properly evaluated Plaintiff's urinary frequency because his finding [that, 'prior to the expiration of his DLI, he did not need more than the usual work breaks' (R. at 22),] is supported by substantial evidence" (R. at 640). The Court remanded the case, however, because the ALJ (1) failed to provide a proper narrative discussion to support his assessment of Plaintiff's RFC; (2) failed to address properly the side effects of Plaintiff's medication in assessing his RFC; and (3) erroneously evaluated Plaintiff's subjective complaints. R. at 637, 640-43.

In his second decision following remand, the ALJ again recounted Plaintiff's testimony from the January 2016 hearing that he needed to use the bathroom every fifteen minutes. R. at 571. The ALJ again found that, "prior to the expiration of [Plaintiff's] date last insured, he did not need more than the usual work breaks," relying on the same evidence of medical improvement after Plaintiff's laser vaporization procedure. R. at 571. Plaintiff now contends that remand is warranted because "the [Magistrate Judge's] affirmation of the ALJ's RFC relates only to evidence cited after the laser vaporization surgery, and therefore does not address the period at issue raised in" his Motion for Summary Judgment. Pl.'s Resp. to Def.'s Mot. Summ. J. 4-5, ECF No. 15.

Although the Court previously found that substantial evidence supported the ALJ's January 2016 determination that, prior to the expiration of Plaintiff's DLI, he did not need more than the usual work breaks (R. at 22, 639-40), Plaintiff apparently faults the Court's reasoning that the evidence found to be substantial only included evidence of improvement after his medical procedure.

The Court's determination that substantial evidence supported the ALJ's finding that Plaintiff did not need more than the usual work breaks before the expiration of his DLI is the law of the case, however. "Under the law of the case doctrine, 'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.'" *Buck v. Berryhill*, 869 F.3d 1040, 1050 (9th Cir. 2017) (quoting *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993)). The law-of-the-case doctrine applies in the Social Security context. *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). "The doctrine is concerned primarily with efficiency, and [it] should not be applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust." *Id.*; *see Tanner v. Comm'r of Soc. Sec.*, 602 F. App'x 95, 97-98 (4th Cir. 2015) (per curiam); *Chaplick v. Mao*, Civil Action No. TDC-13-2070, 2016 WL 4516061, at *3 (D. Md. Aug. 25, 2016) (noting that courts may decline to follow the law of the case (1) when a trial has resulted in substantially different evidence; (2) there has been a change in controlling legal authority that has made a contrary decision of law applicable to the issue; or (3) the prior decision was clearly erroneous or would result in manifest injustice). Plaintiff has not argued that the evidence on remand is substantially different, nor has he shown a change in controlling law. Moreover, clear error or manifest injustice occurs where the Court has patently misunderstood a party, or the Court has made a decision outside the adversarial issues presented to the Court by the parties, or the Court has made an error not of reasoning but of apprehension. *Smith v. Maryland*, Civil Action

No. RDB-17-3051, 2020 WL 128670, at *2 (D. Md. Jan. 10, 2020). Mere disagreement with the Court's previous decision will not suffice. *Id.* Plaintiff disagrees with the Court's reasoning when it found that substantial evidence supported the ALJ's finding that his urinary frequency before his DLI could be addressed with regular breaks. His disagreement with the Court's reasoning does not bar application of the law-of-the-case doctrine here, however. For the reasons discussed above, therefore, the Court affirms the Commissioner's final decision.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here. Thus, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

V

### Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 14) is **GRANTED**. Plaintiff's Motion for Summary Judgment (ECF No. 13) is **DENIED**. The Commissioner's final decision is **AFFIRMED**. A separate order will issue.

Date: June 22, 2020                                        /s/
                                                           Thomas M. DiGirolamo
                                                           United States Magistrate Judge